**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **MICHAEL SCOTT TONEY** | § | |
| | § | |
| **V.** | § | **A-12-CA-313-LY** |
| | § | |
| **RISSIE OWENS, BRAD LIVINGSTON,** | § | |
| **GERALD GARRETT, TONY GARCIA,** | § | |
| **RICK THALER, STUART JENKINS,** | § | |
| **CONRINTH DAVIS, DONNIEA** | § | |
| **GARRETT, JANE CHURCH, and** | § | |
| **R. PALAD** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:    THE HONORABLE LEE YEAKEL
       UNITED STATES DISTRICT JUDGE

The undersigned magistrate judge submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(f) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrates Judges, as amended, effective December 1, 2002.

Before the Court are Plaintiff's Second Amended Complaint brought pursuant to 42 U.S.C. § 1983 (Document Nos. 83-84); Plaintiff's Motion for Summary Judgment (Document No. 176); Defendants' Motion for Summary Judgment (Document No. 180); Defendants' Response to Plaintiff's Motion for Summary Judgment (Document No. 189); Plaintiff's Reply to Defendants' Response to Plaintiff's Motion for Summary Judgment  (Document No. 201); Plaintiff's Response to Defendants' Motion for Summary Judgment (Document No. 206); and Defendants' Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment (Document No. 208).  Plaintiff, proceeding pro se, has been granted leave to proceed in forma pauperis.

I.      **Background**

At the time he filed his Second Amended Complaint, Plaintiff was an inmate incarcerated in the Ellis Unit of the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ-CID").   Plaintiff files this action pursuant to 42 U.S.C. § 1983 alleging he has been unlawfully classified as a sex offender in prison and improperly reviewed for parole.   According to Plaintiff, he was convicted of burglary of a habitation with intent to commit assault with a weapon and was sentenced to 40 years in prison in 1994.   Plaintiff explains he was originally charged with burglary of a habitation with intent to commit sexual assault.   However, he asserts the judge in his case determined there was no evidence of a sexual assault.   Plaintiff indicates the State reindicted him, charging him with burglary of a habitation with the intent to commit aggravated assault with a deadly weapon, and dismissed the original indictment.

Plaintiff asserts that in 2003 the TDCJ-Parole Division ("TDCJ-PD") created a set of conditions intended for sex offenders named "Special Condition X," which the Board of Pardons and Paroles ("BPP") adopted in 2004.   Plaintiff contends the policies allow Special Condition X to be imposed upon inmates identified as sex offenders even if they had not been convicted of sex-related offenses.   Plaintiff alleges in 2004 TDCJ-CID also adopted policies establishing procedures for identifying as sex offenders inmates who had not been convicted of sex crimes.   In 2004, Plaintiff claims he learned in his initial parole review that he was being identified as a sex offender under the new policies and was required to give a "Static 99 Sex Offender Risk Assessment evaluation" at the interview.   Plaintiff complains he was labeled a sex offender even though he was never convicted of a sex-related offense and without first affording him due-process protections.   Specifically,

Plaintiff complains he was not provided notice or a hearing before he was identified as a sex offender and was not told what could be the adverse result of that label and sex assessment risk score.

On April 30, 2004, Plaintiff was denied parole by G. Garrett and Paul Kiel and was set off until April 2006 for his next parole review. In 2007, Plaintiff claims he requested a transfer to the Central Unit in Sugarland, because he feared his peers would find out he had been labeled a sex offender and retaliate against him. In 2008, prior to his parole review, he contends that he was given a "Coleman Notice"[1] and filed objections. Although he requested a hearing, no hearing was provided. When Plaintiff was reviewed in 2010, he indicates he was not provided a Coleman Notice before parole was denied.

In 2011, Plaintiff alleges he was involuntarily transferred to the Ellis Unit where they have Sex Offender Treatment Programs ("SOTP"). Plaintiff asserts he was interviewed by an Institutional Parole Officer ("IPO") at the Ellis Unit on August 5, 2011, and was told he was a sex offender, would be reviewed for parole under Condition X, and could submit objections. Plaintiff's family then hired an attorney to assist Plaintiff with regard to his parole review. Plaintiff asserts his attorney's multiple requests for a hearing went unanswered, and he was denied parole on October 26, 2011. In 2012, Plaintiff indicates he was reviewed by IPO Bayda. According to Plaintiff, Bayda informed Plaintiff he was still labeled a sex offender and would be reviewed under Special Condition X. Plaintiff was again denied parole.

Plaintiff contends he was subjected to on-going violations of his constitutional rights when he was reviewed for parole and classified a sex offender in 2004, 2006, 2008, 2010, 2011, and 2012.

---

[1]So denominated because it stems from the case Coleman v. Dretke, 395 F.3d 216 (5th Cir. 2004), discussed in more detail below.

He contends the sex-offender classification has stigmatized him and subjected him to severe changes in his sentence.  Plaintiff indicates being labeled a sex offender limits with whom he can associate, where he can live, the types of jobs he can have, and the pre-parole treatment programs in which he can participate.  He contends that once the stigma attaches due to the label, it cannot be removed.

Plaintiff sues Chairman of the BPP Rissie Owens, Executive Director of the TDCJ Brad Livingston, former Parole Commissioner of the BPP Gerald Garrett, Parole Commissioner of the BPP Tony Garcia, former Director of the TDCJ-CID Rick Thaler, Director of the TDCJ-PD Stuart Jenkins, former member of the BPP Conrinth Davis, former IPO with the TDCJ-PD Donniea Garrett, IPO of the BPP[2] Jane Church, and IPO of the BPP Rueth Palad.[3]  He seeks a declaratory judgment, compensatory damages against Defendants Owens, Jenkins, Livingston, Garrett, and Garcia, a permanent injunction, nominal damages, costs, and punitive damages.

## II.    History of the Relevant Policies

In their filings, the Defendants have provided the Court with the relevant policies and procedures implicated in this case and the historical development of them.  As explained by Defendants, TDCJ revised Administrative Directive 04.09 ("AD-04.09") on May 3, 1999.  AD-04.09 (rev. 1) provided a policy to "ensure that all sex offenders under its supervision are identified for the purposed of:  DNA testing, sex offender treatment, release processing, parole decision-making, case

---

[2]  According to Plaintiff, IPO's were transferred from the authority of the TDCJ-PD to the BPP in September 2009.

[3]  In his original complaint Plaintiff named as defendants Rissie Owens, Brad Livingston, Ed Owens, G. Garrett, P. Keil Jr., T. Fordyce, C. Davis, T. Leeper, P. Freeman, Tony Garcia, Rick Thaler, J. Patzki, and S. Jenkins.  In his First Amended Complaint he added Bettie Wells.  In his Second Amended Complaint he removed as defendants Ed Owens, Thomas Leeper, P. Freeman, and Bettie Wells but added as defendants Donniea Garrett, Jane Church, and R. Palad.

management, sex offender registration, and classification decision-making." Pursuant to the policy, three divisions of TDCJ were required to identify certain offenders as sex offenders. Those divisions are the Correctional Institutions Division, the Sex Offender Treatment Program ("SOTP") and the Parole Division. Under these rules, and particularly AD-04.09 (rev. 1), Plaintiff would not have been identified as a sex offender.

On January 30, 2004, TDCJ revised AD-04.09. Pursuant to the revised rule—AD-04.09 (rev. 2)—the Sex Offender Identification Criteria were modified to include offenders who had been convicted of a non-sexual offense with a sexual element if an employee of the SOTP or a registered sex offender treatment provider had concluded that sex offender supervision and treatment was warranted. As mentioned above, Plaintiff was first notified he was identified as a sex offender in 2004 by Defendant D. Garrett. Apparently, Plaintiff's non-sexual offense was viewed as having a sexual element, despite Plaintiff's contention that a state district judge had previously ruled that the offense did not involve a sexual element. AD-04.09 was subsequently revised on February 20, 2007. The new version—AD-04.09 (rev. 3)—also required TDCJ to classify offenders as sex offenders if an element of sexual behavior is identified and the offender has been convicted of a non-sexual offense with a sexual element. Plaintiff's classification as a sex offender continued under AD-04.09 (rev. 3).

During this time, the BPP also implemented new polices on these issues. On January 8, 2004, the BPP adopted BPP-POL. 04-01.15. The purpose of this policy was to establish "X" (Sex Offender Condition) as a special condition of parole or mandatory supervision and to establish a procedure for imposing such a condition of parole or mandatory supervision. If a parole panel determined to release an offender on parole and to impose Special Condition X, the policy mandated

certain conditions be imposed, and allowed additional conditions to be added by the offender's supervising parole officer. Sex offenders were defined as "offenders who have admitted, committed, threatened to commit, or are a party to an act which constitutes a sexual offense or sexually deviant behavior." A revised policy was adopted on July 20, 2006, and renamed BPP-POL. 06-07.01. The policy provided a new procedure for offenders who had no current or prior conviction for a sex offense. The policy provided:

> Before submission of a request to the parole panel to impose the Sex Offender Special Condition on offenders who have no current or prior conviction for a sex offense, the parole officer or TDCJ Parole Division representative shall provide to the offender written notice and opportunity to provide a written response within 30 days. Upon the expiration of the notice period, the parole officer or TDCJ Parole Division representative shall provide credible information in writing to the panel that indicates that the offender has engaged in unlawful sexual conduct and could constitute a threat to society.

In 2009, the policy was again revised and renamed, this time called " BPP-POL. 145.263." The procedure for imposing Special Condition X on offenders who had no current or prior conviction for an offense was modified as follows:

> Upon the expiration of the notice period, the parole officer or TDCJ Parole Division representative shall provide credible information in writing to the panel that indicates that the offender constitutes a threat to society by reason of his lack of sexual control.

The policy was revised further on April 15, 2010, and July 19, 2013, but did not change the procedure as set forth above.

The TDCJ-PD also adopted policies to establish administrative guidelines for the sex-offender caseload. One of the relevant policies, PD/POP-3.6.1, was revised on September 1, 2011. It references PD/POP-3.6.8, and acknowledges that pursuant to rulings of the United States Court of Appeals for the Fifth Circuit and the Texas Court of Criminal Appeals, offenders who do not have

a sex-offense conviction are entitled to be heard in person to present evidence, call witnesses, and confront and cross-examine witnesses prior to the imposition of Special Condition X. The policy provides certain procedures for offenders who are convicted of non-sexual offenses but nevertheless identified as sex offenders.

## II.    Summary of the Parties' Arguments

Defendants argue that the claims in Plaintiff's Second Amended Complaint are time-barred. They maintain Plaintiff learned in 2004 he was designated as a sex offender pursuant to the BPP policy and procedures. As a fallback to this date, they note that Plaintiff knew he was being considered for the imposition of Special Condition X by April 23, 2008, because he signed a copy of the Coleman Notice on that date. Defendants contend that regardless of whether Plaintiff was aware of his designation in 2004 or 2008, his complaint is time-barred. Defendants further argue Plaintiff has failed to establish that Livingston or Thaler were personally involved in the alleged constitutional deprivation. Livingston and Taylor each argue that they cannot be held liable merely because of their supervisory positions.

Defendants also argue that Plaintiff's right to procedural due process was not violated. They assert Plaintiff is not currently classified as a sex offender, and he has not had sex-offender parole conditions imposed upon him. They rely on the affidavit of Joseph Bon-Jorno, Manager II, Sex Offender Rehabilitation Programs ("SORP"), Rehabilitation Programs Division. According to Bon-Jorno, on July 6, 2012, he reviewed the ITP computer screens for Plaintiff. Bon-Jorno explains the ITP is a plan of treatment aimed at assisting offenders to reduce recidivism and improve knowledge, social interaction and life skills. An ITP plan could include the SOTP. At the time Bon-Jorno reviewed the ITP for Plaintiff, the SOTP field indicated "PA" or "pending assignment/assessment"

to the SOTP and noted "BURG IS SEX RELATED (DW)."  Bon-Jorno claims he recognized this was incorrect because Plaintiff was not identified as a sex offender.  According to Bon-Jorno, Plaintiff was never subjected to an assessment for SOTP.  Bon-Jorno attests he directed a staff member to delete the "PA" designation from the SOTP-18 field.  Attached to Bon-Jorno's affidavit is a snapshot of the ITP screen on January 7, 2013, which reflects Plaintiff is not currently identified as a sex offender.  Defendants additionally argue Plaintiff lacks standing because he has not suffered an injury in fact (identification as a sex offender).  They further argue his claim of injury is of a future injury that is conjectural and hypothetical.[4]

In response, Plaintiff points out the Defendants have misconstrued his claims and challenges Defendants' contention that due process is only required for releasees on parole and not offenders in prison.  Plaintiff emphasizes he has never claimed Special Condition X was imposed on him.  He explains his lawsuit is about the defendants depriving him of a liberty interest by labeling him a sex offender without providing him adequate due-process protections, and contends he has standing to raise this claim.  He denies his lawsuit is time-barred and argues there is a continuing injury occurring.  Plaintiff contends that Livingston and Thaler, as policymakers for TDCJ, were personally involved in the alleged constitutional violations. Plaintiff also denies the defendants are entitled to qualified immunity protection.

---

[4]Defendants also address several more minor issues.  They contend that Plaintiff's argument they violated the Texas Separation of Powers Doctrine fails to raise a federal constitutional claim (but fail to recognize Plaintiff's additional claim brought under the due process clause of the Texas Constitution).  And despite Plaintiff making clear in his Second Amended Complaint he does not seek damages from the defendants in their official capacities, they contend they are entitled to Eleventh Amendment immunity.  Finally, Owens, Livingston, Garrett, Garcia, Thaler, Jenkins and Davis assert their entitlement to qualified immunity.  (Plaintiff does not sue Defendants D. Garrett, Church or Palad in their individual capacities and they have therefore not asserted qualified immunity.)

Plaintiff has also filed his own Motion for Summary Judgment. Plaintiff goes to great lengths to show he was classified as a sex offender. Plaintiff argues he has a liberty interest to remain free of the stigma attached to a sex-offender designation and mandated sex-offender-treatment programming. Plaintiff denies he has been provided the process that is due before he was labeled a sex offender. Plaintiff also argues he has a state-created liberty interest in avoiding sex offender treatment and identification. Plaintiff maintains the SOTP scheme subjects him to "atypical and significant hardships" that are out of proportion to the "ordinary incidents of prison life." Plaintiff contends he requested a transfer from the Wynne Unit out of fear for his safety in 2007, and was transferred to the Central Unit. Plaintiff also points out he makes his claim regarding the separation of powers doctrine under the Texas Constitution.

In reply, Defendants acknowledge Plaintiff's claim is whether being identified as a sex offender, for classification purposes during incarceration, without notice and opportunity to be heard, is enough to trigger procedural due process protections. They note this is a question of first impression in the Fifth Circuit. They argue that Plaintiff was not denied due process, because sex-offender programming was never imposed on him. While they acknowledge that the Plaintiff's ITP screen showed "pending assessment" under the SOTP field, they contend this was corrected and the current ITP screen does not have a pending assessment for the SOTP. Defendants also deny Plaintiff was stigmatized, because he has not been physically assaulted and has not requested a unit transfer due to the fact he was identified as a sex offender, and note he has not offered any medical records to tie any medical conditions to him being identified as a sex offender. Defendants also note that Plaintiff was never required to participate in any sex-offender-treatment program while he was identified as a potential candidate for the SOTP.

With regard to Plaintiff's claim that he requested a transfer from the Wynne Unit because he feared for his safety, Defendants submit Plaintiff's request to the warden asking for a transfer to the Central Unit in Sugarland, Texas, so that he could be closer to his aging relatives. They further note that Plaintiff's claim that he was involuntarily transferred to the Ellis Unit from the Central Unit so that he could attend sex-offender-treatment programs is incorrect. They claim the Central Unit was closed and shuttered on August 31, 2011, and that is what required Plaintiff's transfer, and note further that the Ellis Unit does not offer SOTP or Sex Offender Education Programs ("SOEP"). Finally, Defendants assert Plaintiff has provided no evidence, except for a self-serving affidavit, that IPO Bayda of the Ellis Unit informed Plaintiff he was considered a sex offender on August 16, 2012.

In response. Plaintiff repeats that he is contending he has a liberty interest arising from the Due Process Clause itself in avoiding the stigmatization of being labeled a sex offender and having sex-offender conditions imposed on him. He once again complains he was labeled a sex offender despite never being convicted of a sex crime or a "reportable conviction." Plaintiff also objects to several of the facts submitted by Defendants. For example, Plaintiff clarifies "PA" means "pending assignment" and not "pending assessment" as indicated by Defendants. Plaintiff relies on the Individualized Treatment Plan Procedures Manual which explains "PA - Pending Assignment" as follows:

> This code reflects an offender has a need for a program, however, pre-entrance testing must be completed prior to enrollment. Each treatment department should be able to identify personnel who are qualified to administer these types of tests. This code should only be used for specific programs requiring assessment testing prior to enrollment, otherwise, the "PP" Pending Placement code is the most suitable.

Plaintiff also objects to Defendants' statement that Plaintiff's ITP on January 25, 2001, was identical to the ITP in January 2007, because Defendants failed to produce any ITP dated January 25, 2001.

10

Plaintiff objects to Defendants' claim that his transfer the Central Unit was the result of his request, because Defendants offered no proof that the "hardship transfer" was approved and was the basis of the transfer.  He contends his letter is thus inadmissible.  In addition, he disputes Defendants' statement that sex-offender-treatment programs are not offered at the Ellis Unit.  He provides the Court with an affidavit from an offender assigned to the Ellis Unit, who is participating in sex-offender therapy at that unit.  Plaintiff also takes objection to Defendants' statement that Plaintiff has no evidence, except his self-serving affidavit, that he met with IPO Bayda at the Ellis Unit and was told he was considered a sex offender.  Plaintiff points out that the summary judgment evidence includes the 8-23-12 Case Summary prepared by IPO Tony Bayda, which states "Offender Toney is identified as a sex offender due to current conviction for Burglary of a Habitation with Intent to Commit Aggravated Assault during which the subject attempted to sexually assault an adult female."

## III.  Analysis

### A.  Standard

The parties have filed cross motions for summary judgment.  A court will, on a motion for summary judgment, render judgment if the evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Eason v. Thaler, 73 F.3d 1322, 1325 (5th Cir. 1996);  Int'l Shortstop, Inc. v. Rally's Inc., 939 F.2d 1257, 1263 (5th Cir. 1991), cert. denied, 502 U.S. 1059 (1992).  When a motion for summary judgment is made and supported, an adverse party may not rest upon mere allegations or denials but must set forth specific

facts showing there is a genuine issue for trial. Ray v. Tandem Computers, Inc., 63 F.3d 429, 433 (5th Cir. 1995); FED. R. CIV. P. 56.[5]

Both movants and non-movants bear burdens of proof in the summary judgment process. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The movant with the burden of proof at trial must establish every essential element of its claim or affirmative defense. Id. at 322. In so doing, the moving party without the burden of proof need only point to the absence of evidence on an essential element of the non-movant's claims or affirmative defenses. Id. at 323-24. At that point, the burden shifts to the non-moving party to "produce evidence in support of its claims or affirmative defenses . . . designating specific facts showing that there is a genuine issue for trial." Id. at 324. The non-moving party must produce "specific facts" showing a genuine issue for trial, not mere general allegations. Tubacex v. M/V Risan, 45 F.3d 951, 954 (5th Cir. 1995).

In deciding whether to grant summary judgment, the Court should view the evidence in the light most favorable to the party opposing summary judgment and indulge all reasonable inferences in favor of that party. The Fifth Circuit has concluded "[t]he standard of review is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon the evidence before the court." James v. Sadler, 909 F.2d 834, 837 (5th Cir. 1990) (citing Matsushita, 475 U.S. at 586)). To the extent

---

[5]Effective December 1, 2010, Rule 56 was amended. Although there is a slight language change and a change in the designation of subsections, the legal standard remains the same. See FED. R. CIV. P. 56(a) (eff. Dec.1, 2010) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").

facts are undisputed, a Court may resolve the case as a matter of law.  Blackwell v. Barton, 34 F.3d 298, 301 (5th Cir. 1994).

### B.      Standing

Defendants contend Plaintiff lacks standing because he has not been harmed.  In particular, Defendants argue Plaintiff "has not suffered an injury in fact (identification as a sex offender) and that his claim of injury is of a future injury that is conjectural and hypothetical."

Defendants' argument is based on a misunderstanding of Plaintiff's claims.  The basic law is not in dispute.  Article III of the Constitution confines the federal courts to deciding actual cases and controversies.  Society of Separationists, Inc. v. Herman, 959 F.2d 1283, 1285 (5th Cir.), cert. denied, 506 U.S. 866 (1992) (citing Allen v. Wright, 468 U.S. 737 (1984)).  "The rule that litigants must have standing to invoke the power of the federal courts is perhaps the most important doctrine stemming from the case or controversy requirement."  Id.  "Standing defies precise definition, but at the least insists that the complained of injury be real and immediate rather than conjectural, that the injury be traceable to the defendant's allegedly unlawful conduct, and that relief from the injury must be likely to follow from a favorable ruling."  Id.  Plaintiffs in the federal courts "must allege some threatened or actual injury resulting from the putatively illegal action before a federal court may assume jurisdiction."  O'Shea v. Littleton, 414 U.S. 488, 493 (1974) (quoting Linda R.S. v Richard D., 410 U.S. 614, 617 (1973)).  Abstract injury is not enough.  It must be alleged that the plaintiff "has sustained or is immediately in danger of sustaining some direct injury" as the result of the challenged statute or official conduct.  Id. at 494, (quoting Massachusetts v. Mellon, 262 U.S. 447, 488 (1923)).  The injury or threat of injury must be both "real and immediate, not "conjectural or "hypothetical."  Id. (citations omitted).

13

In reviewing the standing question, the Court accepts as true all material allegations of the complaint, and construes the complaint in favor of the complaining party.  See Warth v. Seldin, 422 U.S. 490, 501 (1975).  In this case, Plaintiff alleges he has been labeled a sex offender by the TDCJ and the BPP even though he has not been convicted of a sex offense.  Plaintiff claims because of this label he has been stigmatized, denied opportunities for various treatment, educational, and religious programs, and has been transferred.  Defendants' own summary judgment evidence confirms Plaintiff's allegation that for several years he was labeled a sex offender by both the BPP and the TDCJ.  Although Plaintiff has not been released on parole and Condition X has not been made a condition of parole, Plaintiff has adequately shown he has suffered adverse consequences due to the sex-offender label.  Plaintiff clearly has standing to raise these arguments, and Defendants' motion challenging standing should be denied.

### C.    Eleventh Amendment

Owens, Livingston, G. Garrett, Garcia, Thaler, Jenkins, and Davis claim they are entitled to Eleventh Amendment immunity.  If they had been sued in their official capacities for monetary damages, the Eleventh Amendment would apply, because state officials sued in their official capacities for monetary damages are immune from suit under the Eleventh Amendment , as such an action is viewed as a suit against the sovereign.  Pennhurst State School Hosp. v. Halderman, 465 U.S. 89 (1984).   But here, Plaintiff makes clear he is not suing these defendants in their official capacities for monetary damages.  Instead, Plaintiff seeks injunctive relief against these defendants. The Eleventh Amendment does not apply to a request for a federal court to grant prospective injunctive relief against state officials on the basis of federal claims; thus, a request for prospective injunctive relief against state officials or employees in their official capacities falls within an

exception to Eleventh Amendment immunity.  See Ex parte Young, 209 U.S. 123, 149 (1908).
Defendants' argument based on Eleventh Amendment immunity is not applicable to this case.

### D.    BPP's Classification

#### 1.    Statute of Limitations

Defendants contend that in 2004 Plaintiff learned that the BPP had designated him a sex
offender pursuant to the BPP policies and procedures.  They further maintain Plaintiff knew he was
being considered for the imposition of Special Condition X on April 23, 2008, because he signed a
copy of a Coleman Notice related to that review.

Because Congress has not provided a statute of limitations for civil-rights actions brought
under section 1983, federal courts adopt the forum state's general personal-injury limitations period.
Flores v. Cameron Cty., Tex., 92 F.3d 258, 271 (5th Cir. 1996).  In Texas, the pertinent limitations
period is two years.  Id.; see also TEX. CIV. PRAC. & REM. CODE § 16.003(a).  "The cause of action
accrues, so that the statutory period begins to run, when the plaintiff knows or has reason to know
of the injury which is the basis of the action."  Gonzales v. Wyatt, 157 F.3d 1016, 1020 (5th Cir.
1998).  Where there is a continuing violation, however, the two-year limitations period does not
begin to run until the end of the continuing violation.  See Dews v. Town of Sunnyvale, 109 F. Supp.
2d 526, 563 (N.D. Tex. 2000).  "To establish a continuing violation, however, the plaintiff must
establish that the unconstitutional or illegal act was a part of 'standing operating procedure,' a fixed
and continuing practice."  Perez v. Laredo Junior Coll., 706 F.2d 731, 733 (5th Cir. 1983).  A
plaintiff cannot use the continuing violation theory to resurrect claims alleging a civil rights violation
"concluded in the past, even though its effects persist."  McGregor v. La. State Univ. Bd. of
Supervisors, 3 F.3d 850, 867 (5th Cir. 1993).

15

The relevant facts on this point are not in dispute. By Plaintiff's own admission, he was first told he was labeled a "sex offender" in 2004. According to Plaintiff, the parole review in 2004 was initiated by Defendant D. Garrett and resulted in the denial of parole by Defendant G. Garrett James Paul Kiel Jr. Plaintiff was next reviewed for parole in 2006. According to Plaintiff, he was interviewed by an unnamed IPO at the Wynne Unit and was denied parole by Thomas G. Fordyce and Defendant Conrinth Davis. Plaintiff's next parole review occurred in 2008. Plaintiff alleges Defendant Palad interviewed Plaintiff, informed him he was designated as a sex offender, and provided him a Coleman Notice. Plaintiff was denied parole on September 24, 2008, by Pamela D. Freeman and Barbara Lorraine.[6]

Plaintiff executed his original complaint on April 4, 2012, well more than two years after his parole reviews in 2004, 2006, and 2008. He does not claim that he was unaware of the actions of the defendants or their immediate effects. There is no question but that the events of which he complains would "in fairness and logic . . . have alerted the average lay person to act to protect his rights." Glass v. Petro-Tex Chemical Corp., 757 F.2d 1554, 1560 (5th Cir. 1985). Accordingly, the complaints Plaintiff makes regarding the denial of parole in 2004, 2006, and 2008 are barred by the applicable statute of limitations. However, Plaintiff's complaint also alleges that during parole reviews in 2010, 2011, and 2012 he was also identified as a sex offender. The complaint was filed within two years of all of these reviews. These claims are thus not time barred.

---

[6] In his Second Amended Complaint Plaintiff identified Lorraine as "Corrine," and has never named either as a defendant.

### 2.      Parole review claims

Plaintiff alleges that when he was reviewed for parole in August 2010, Defendant Palad informed him he was "still designated as a sex offender."  According to Plaintiff, he was not given a <u>Coleman</u> Notice prior to this review, and he was denied parole on October 13, 2010.  The reason given for the denial was "2D," one of many codes BPP parole panels use to explain their reasons for denying parole.[7]  Plaintiff was again reviewed for parole in August 2011, this time by Church. Plaintiff claims Church informed him he was a sex offender and would be reviewed "under Condition X" and allowed Plaintiff to submit objections.  Despite a request for hearing, Plaintiff was not given one.  On October 26, 2011, parole was denied for reason "2D."  In 2012, IPO Bayda reviewed Plaintiff for release on parole.  Plaintiff contends that Bayda informed him he was still labeled a sex offender and would be reviewed under Special Condition X.  On October 22, 2012, Plaintiff was denied parole for reason "2D."[8]  Finally, on October 1, 2103, Plaintiff was denied parole, again for the reason "2D."

Plaintiff argues that the offense for which he was convicted has no sexual element.  He contends his right to due process was violated when the BPP classified him as a sex offender and then reviewed him for parole as if he were a sex offender without first affording him a hearing.

---

[7]      Every time Plaintiff was denied parole the reason given was "2D."  The 2D designation reflects the parole panel voted to defer parole due to the nature of the offense, specifically:

> The record indicates that the inmate committed one or more violent criminal acts indicating a conscious disregard for the lives, safety, or property of others; or the instant offense or pattern of criminal activity has elements of brutality, violence or conscious selection of victim's vulnerability such that the inmate poses a continuing threat to public safety; or the record indicates use of a weapon.

[8]  The Court notes on October 24, 2012, Defendant Freeman had voted to grant parole pending sex offender treatment, but that vote was withdrawn.

Over the past decade several cases have addressed the constitutionality of Texas's policy of imposing and enforcing sex-offender conditions on parolees who have never been convicted of a sex offense.  First, in <u>Coleman v Dretke</u>, the Fifth Circuit held that Texas was required to provide procedural due process protections before imposing sex-offender registration and therapy as conditions on the release on parole or mandatory supervision of a prisoner who had never been convicted of a sex crime.  <u>See</u> <u>Coleman v. Dretke</u>, 395 F.3d 216, 222–23 (5th Cir. 2004).  The procedures required by <u>Coleman</u> included a hearing, and a finding that the prisoner "constitute[d] a threat to society by reason of his lack of sexual control." <u>Id.</u> at 225.  Following <u>Coleman</u>, Texas implemented a process to comply with its view of <u>Coleman's</u> mandate, but continued to subject parolees never convicted of a sex offense to sex-offender conditions as a condition of mandatory supervision and parole.  These procedures were then challenged in the case of <u>Meza v. Livingston</u>, 607 F.3d 392 (5th Cir. 2010).  As explained in <u>Meza</u>, the BPP's post-<u>Coleman</u> procedures involved an administrative review of a parolee's file by the BPP to determine whether the BPP should impose sex-offender conditions.  <u>Id.</u>  Although the BPP provided parolees with written notice that their parole or mandatory supervision might be conditioned on sex-offender registration and treatment, a parolee only had the opportunity to respond with written statements or documents contesting the imposition of such conditions, and had no right to be heard in person.  <u>Id.</u>  A panel of the BPP then held a hearing, at which a representative of TDCJ offered a short presentation.  <u>Id.</u>  Neither the parolee nor his attorney were allowed to attend the panel's hearing or present facts or arguments on behalf of the parolee.  <u>Id.</u> at 398.  After a hearing, the BPP voted on the imposition of sex-offender conditions without producing any written findings, informing the parolee of the facts on which the BPP based its decision, or providing the parolee with a right to appeal the BPP's decision.  <u>Id.</u>

18

In May 2010, the Fifth Circuit held that these procedures were constitutionally deficient. The court made it abundantly clear that it meant what it said in Coleman. See id. at 403. The court stated that sex-offender conditions could only be imposed on individuals who did not have a sex offense conviction if the individual has received due process, and that process requires, at a minimum, (1) written notice that sex-offender conditions may be imposed, (2) disclosure of the evidence being presented against the parolee, (3) a hearing at which the parolee is permitted to be heard in person, present evidence, and call witnesses, (4) an impartial decision maker, and (5) a written statement by the factfinder as to the evidence relied upon and the reasons for its decision. Id. at 409. A year after the Fifth Circuit's decision in Meza, the Texas Court of Criminal Appeals granted habeas corpus relief to a Texas parolee who had not been convicted of a sex offense, and yet whose parole had been revoked for violation of sex-offender conditions imposed under the post-Coleman procedures found constitutionally deficient in Meza. See Ex Parte Evans, 338 S.W.3d 545, 552 (Tex. Crim. App. 2011). Evans's relief included immediate reinstatement of his release on mandatory supervision and removal of "Special Condition X" from the terms of his parole. Id. at 556.

The facts of this case are different than those in Meza or Coleman. Here, as Defendants point out, Plaintiff has not yet been granted parole, nor has he had release on parole conditioned on complying with sex offender restrictions. In effect, Plaintiff is contending that the same procedures Coleman and Meza require before a parolee may be subjected to sex offender conditions should also apply when an inmate who the BPP considers to be a sex offender is simply being reviewed for parole. This claim fails, however, because due process protections only apply when a liberty interest is being threatened, and a prisoner does not have a liberty interest in being granted parole.

Under well-established federal law, persons incarcerated in prison do not have a liberty interest in being released on parole.  Greenholtz v. Inmates of Nebraska Penal & Corr. Complex, 442 U.S. 1, 7 (1979).  Texas law also makes parole discretionary and does not create a liberty interest in parole that is protected by the Due Process Clause.  Orellana v. Kyle, 65 F.3d 29, 31-32 (5th Cir. 1995).  Because Texas inmates have no protected liberty interest in parole, they cannot have a liberty interest in parole consideration or parole procedures.  See Johnson v. Rodriguez, 110 F.3d 299, 308 (5th Cir. 1997) (stating that Texas prisoners cannot mount a challenge against any state parole review procedure on procedural or substantive due process grounds).  It is entirely up to each State whether it chooses to create a parole system and the amount of discretion with which it entrusts its parole decisionmakers.  Parole is a privilege, not a right, even after an inmate accrues the minimum amount of time-served credit necessary to be eligible for parole.  See Greenholtz, 442 U.S. at 7 (convicted persons have no constitutional right to be conditionally released before the expiration of a valid sentence); 37 TEX. ADMIN. CODE § 145.3(1) ("Release to parole is a privilege, not an offender right, and the parole decision maker is vested with complete discretion to grant, or to deny parole release as defined by statutory law.").  An inmate who has met the minimum requirement for time served under the applicable parole eligibility statute is not automatically entitled to be released on parole; rather, he is only entitled to a review to determine whether or not he will be released on parole.  See 37 TEX. ADMIN. CODE § 145.3(1) ("[T]he parole decision maker is vested with complete discretion to grant, or to deny parole release. . . .") (emphasis added); Allison v. Kyle, 66 F.3d 71, 74 (5th Cir. 1995) (because a prisoner has no liberty interest in obtaining parole in Texas, he cannot complain of the constitutionality of procedural devices attendant to parole decisions).

20

As explained by the Fifth Circuit, "[t]he protections of the Due Process Clause are only invoked when State procedures which may produce erroneous or unreliable results imperil a protected liberty or property interest." Johnson, 110 F.3d at 308 (citations omitted).  In Johnson, the Fifth Circuit concluded the plaintiff's allegations that the Texas Board of Pardons and Paroles considers unreliable or even false information in making parole determinations, without more, simply do not assert a federal constitutional violation.  Id.  "[I]n the absence of a cognizable liberty interest, a state prisoner cannot challenge parole procedures under the Due Process Clause."  Id. at 309 n.13.  Because Plaintiff has no liberty interest in obtaining parole in Texas, he has no claim for violation of due process in the procedures attendant to his parole decisions. Orellana, 65 F.3d at 31.  Thus, Texas is not required by the Due Process Clause to give Plaintiff any procedural protections when it considers him for parole, even if the records the parole panel bases its decision on classify the Plaintiff as a sex offender.

### E.      TDCJ's Classification

In addition to challenging the processes under which he was considered for parole, Plaintiff also challenges the fact that the TDCJ  has at times classified him as a sex offender in its records, without ever giving him notice, a chance to contest that classification, or any other procedural protections.  As with the prior claim, the State argues the claim is time barred, and, even if not, is lacking in merit.

#### 1.      Statute of Limitations

Plaintiff contends that in 2007 he learned his ITP screen showed he was classified as a sex offender by TDCJ.  After protesting the classification, Plaintiff was allegedly informed his crime had

a "sexual element."[9]  Defendants confirm this classification continued until at least July 2012, and

possibly as late as January 2013.  As explained above, the limitations period for Plaintiff's claims

is two years. However, where there is a continuing violation, the two-year limitations period does

not begin to run until the end of the continuing violation.  See Dews v. Town of Sunnyvale, 109 F.

Supp. 2d 526, 563 (N.D. Tex. 2000).  As mentioned above, to establish a continuing violation a

"plaintiff must establish that the unconstitutional or illegal act was a part of 'standing operating

procedure,' a fixed and continuing practice."  Perez v. Laredo Junior Coll., 706 F.2d 731, 733 (5th

Cir. 1983). Unlike Plaintiff's parole reviews, his classification by the TDCJ was ongoing and

persisted until 2012 or 2103 and the classification was part of a standing operating procedure.  As

such, Plaintiff's claims regarding his classification by the TDCJ are not time-barred.

### 2.    TDCJ's Classification

There is no dispute that Plaintiff was classified as a sex offender by the TDCJ despite the fact

he has never been convicted of a sex-related offense.  What is disputed is whether the TDCJ must

give any procedural protections to an inmate before it makes such a classification.

The Due Process Clause protects against deprivations of "life, liberty, or property without

due process of law." U.S. CONST. AMEND. XIV.  The Supreme Court has identified two situations

in which a prisoner can be deprived of his liberty (beyond the obvious deprivation that occurs when

one is incarcerated) such that due process is required.  The first is when a change in the prisoner's

conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court.

See Sandin v. Conner, 515 U.S. 472, 484 (1995); Vitek v. Jones, 445 U.S. 480, 492-93 (1980)

---

[9] In his response to Defendants' Motion for Summary Judgment Plaintiff indicates the ITP was actually altered to classify him as a sex offender in 2004 after he was reviewed for parole by Defendant D. Garrett.

(holding that a prisoner is entitled to due process prior to being transferred to a mental hospital). The second situation is when the state has consistently bestowed a certain benefit to prisoners, usually through statute or administrative policy, and the deprivation of that benefit "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484; Wolff v. McDonnell, 418 U.S. 539, 558 (1974) (prisoners may not be deprived of statutory "good-time credits" without due process).

Plaintiff's right to procedural due process depends on a two-step inquiry. See Coleman v. Dretke, 395 F.3d 216, 221 (5th Cir. 2004) (holding the court must first determine whether Coleman had a liberty interest in not having sex-offender conditions placed on his parole, and, if so, whether the state provided constitutionally sufficient procedures before imposing them). Here, the inquiry turns on the first step, as it is undisputed that TDCJ has never provided Plaintiff any procedural rights with regard to its designation of him as a sex offender.

Plaintiff argues that under the Supreme Court's decision in Vitek v. Jones, the classification of him as a sex offender presents such a dramatic departure from the basic conditions of imprisonment that the Due Process Clause of the Fourteenth Amendment mandates he be provided procedural protections before that designation is made. When the Fifth Circuit addressed Vitek in the Coleman case, it explained:

> In Vitek, the Court found unconstitutional a state law that allowed prison officials to identify inmates as mentally ill and transfer them to mental institutions for involuntary confinement and treatment without a hearing. Because of the associated stigma, the Court held that involuntary commitment to an institution went beyond the ordinary loss of freedom suffered by inmates. The Court noted that "[a]mong the historic liberties protected by the Due Process Clause is the right to be free from, and to obtain judicial relief for, unjustified intrusions on personal security." Based on the combination of stigma and compelled behavior modification treatment, the court held

23

> that the inmate had been deprived of a protected liberty interest, and thus the state was required to provide procedural protections.

Coleman, 395 F.3d at 222 (citing Vitek, 445 U.S. at 492-494).  The Fifth Circuit concluded that the facts of Coleman's case were materially indistinguishable from those in Vitek.  Id. at 223.  The court noted the sex-offender therapy, which involved intrusive and behavior-modifying techniques, was analogous to the mental health treatment mandated in Vitek.  The court thus concluded Coleman had a liberty interest in freedom from the stigma and the compelled treatment on which his parole was conditioned, and the state was required to provide procedural protections before imposing such conditions.[10]

Very few cases have addressed arguments like that which Plaintiff makes here.  The difference between the facts of this case, and those in Vitek, Coleman, and Meza, is that Plaintiff is not complaining about being forced to participate in any particular program, nor is he contending that he is being required to comply with any particular conditions, as a result of the TDCJ considering him to be a sex offender.[11]  The case with facts most like this one is Renchenski v. Williams, 622 F.3d 315, 326 (3d Cir. 2010).  There, Renchenski was sentenced to life without parole for murder.

---

[10]   The Ninth and Eleventh Circuits had also held that prisoners who have not been convicted of sex offenses have a liberty interest in freedom from sex-offender classification and conditions. Id. (citing Kirby v. Siegelman, 195 F.3d 1285, 1292 (11th Cir. 1999) (holding that a state's classification of a prisoner as a sex offender and requirement that he complete sex-offender treatment as a precondition to parole eligibility implicated a liberty interest under the Due Process Clause); Neal v. Shimoda, 131 F.3d 818, 831 (9th Cir. 1997) (holding that a state must provide a hearing before classifying a prisoner as a sex offender and requiring the prisoner to complete a treatment program as a condition to parole eligibility); cf. Chambers v. Colo. Dep't of Corr., 205 F.3d 1237, 1243 (10th Cir. 2000) (holding that the state's imposition of sex offender status on an inmate never convicted of a sex offense, combined with a reduction in good time credits if the inmate did not participate in treatment, implicated a state-created liberty interest).

[11]   What Plaintiff contends is that the designation has subjected him to potential retaliation, and impacts the programs he is permitted to participate in while in prison.

His correctional program plan was altered during his incarceration to indicate that "sexual" was an area of concern.  Based on this, Renchenski was enrolled in "a slew of prison programs, including sex offender orientation, sex offender core, and sex offender maintenance." Id. at 321.  Renchenski refused to participate in the programs, and was never "assessed" for them.  Id. at 322 n.4. Renchenski then challenged the state's designation of him as someone with a "sexual" element to his crime without giving him any due process protections.  The Third Circuit agreed, holding that "the stigmatizing effects of being labeled a sex offender, <u>when coupled with mandatory behavioral modification therapy</u>, triggers an independent liberty interest." Id. at 328 (emphasis added).  Relying on <u>Vitek</u>, the court agreed with Renchenski that only after a prisoner has been afforded due process may sex-offender conditions be imposed in prison on an inmate who has not been convicted of a sexual offense.

Although the Defendants try to argue to the contrary, there can be no real argument that classifying a person, whether in prison or out, as a sex offender is stigmatizing.  As the Third Circuit noted in <u>Renchenski</u>, the "sex offender" label severely stigmatizes an inmate, and a prisoner labeled as a sex offender faces unique challenges in the prison environment.  <u>Renchenski</u>, 622 F.3d at 326. The Fifth Circuit in <u>Coleman</u> similarly noted that when a state labeled an individual as a sex offender, it "strongly implied" that the identified individual had committed a sex offense, "which can undoubtedly cause adverse social consequences."  409 F.3d at 668.  And the Ninth Circuit has stated that "[w]e can hardly conceive of a state's action bearing more stigmatizing consequences than the labeling of a prison inmate as a sex offender."  <u>Neal</u>, 131 F.3d at 829 (internal quotation marks omitted).  Finally, the Tenth Circuit found that the sex offender label is "replete with inchoate stigmatization." <u>Chambers</u>, 205 F.3d at 1242.

But stigmatization is not the only thing that the cases have concluded a prison inmate must show before he has a due process right in his classification.  All of the cases that have addressed this issue, including Vitek, Coleman, and Renchenski, have emphasized that it is both the stigmatizing impact of a designation (whether the need for mental health treatment, or being a sex offender) and compelled participation in treatment of some kind, which triggers the protections of the Due Process Clause.  Here, Plaintiff has not been compelled to participate in sex-offender treatment or therapy. The closest Plaintiff comes is his contention that the requirement that he complete the "Static 99" assessment was the beginning of his sex-offender therapy.  But the facts make it undisputed that the Static 99 is a general risk assessment tool.   The one-page worksheet assigns points for (1) number of prior sex offenses, (2) any stranger victim, (3) any unrelated victim, (4) the victim's gender, (5) any convictions for non-contact sex offenses, (6) ever lived with an intimate partner/two years, (7) age, (8) index:  assaultive conviction (non-sexual by title), (9) prior:  assaultive conviction (non-sexual by title), and (10) more than four sentencing occasions.  The points are totaled to determine whether an offender is a low, moderate, or high risk.  There is no evidence that TDCJ has mandated that Plaintiff participate in a sex offender evaluation or sex offender treatment program.  Because sex-offender therapy or similar behavior-modification therapy has not yet been imposed on Plaintiff, the Due Process Clause has not been triggered by the TDCJ's designation of Plaintiff.   The Court thus recommends that this claim be dismissed.

### F.    Qualified Immunity

To the extent that Plaintiff is suing Owens, Livingston, Garrett, Garcia, Thaler, Jenkins, and Davis as individuals and is seeking monetary damages, these defendants are protected by qualified immunity.  The doctrine of qualified immunity affords protection against individual liability for civil

damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Immunity in this sense means immunity from suit, not merely from liability. Jackson v. City of Beaumont, 958 F.2d 616 (5th Cir. 1992). "Qualified immunity is designed to shield from civil liability all but the plainly incompetent or those who violate the law." Brady v. Fort Bend Cnty., 58 F.3d 173, 174 (5th Cir. 1995). As explained above, Plaintiff has not shown a violation of his constitutional rights. Alternatively, even if he had been able to do so, the issue he has raised is one of first impression, and thus any constitutional right he might have was not "clearly established" at the time the challenged actions took place. Accordingly, Owens, Livingston, Garrett, Garcia, Thaler, Jenkins, and Davis are immune from any damage claim against them individually.

## G.      Supplemental Jurisdiction

Finally, Plaintiff asserts a state law claim under the Texas separation of powers doctrine and due process clause of the Texas Constitution. Pursuant to 28 U.S.C. § 1367, a district court generally has supplemental jurisdiction over state-based claims that are so related to claims in the action over which it has original jurisdiction that they form part of the same case or controversy. However, a district court may decline to exercise supplemental jurisdiction over a claim if the court has dismissed all claims over which it has original jurisdiction. Because the undersigned recommends that Plaintiff's federal claims be dismissed, he further recommends that the District Judge decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

## VII.  RECOMMENDATION

The undersigned recommends that the District Court **GRANT** Defendants' Motion for Summary Judgment and **DENY** Plaintiff's Motion for Summary Judgment. The undersigned further

recommends that the District Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

## VIII. OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. Battles v. United States Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within 14 days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140, 150-153, 106 S. Ct. 466, 472-74 (1985); Douglass v. United Servs. Auto. Assoc., 79 F.3d 1415, 1428-29 (5th Cir. en banc, 1996).

To the extent that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 31st day of January, 2014.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE